Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9040 | **DATE** | 1/16/2004 |
| **CASE TITLE** | Ray vs. Northrop Grumman Corp | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Northrop's motion (Doc 11-1) for summary judgment is granted in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JAN 1 6 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 21 |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| SCT courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GERALD RAY, )
)
        Plaintiff, )
)
vs. ) 02 C 9040
)
NORTHROP GRUMMAN CORPORATION, a )
Delaware corporation qualified by the State of )
Illinois, )
)
        Defendant. )

DOCKETED
JAN 1 6 2004

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Defendant Northrop Grumman Corp.'s ("Northrop") motion for summary judgment. For the reasons set forth below, the motion is granted.

## BACKGROUND

Northrop is a global aerospace and defense company that operates a manufacturing plant in Rolling Meadows, Illinois. Plaintiff Gerald Ray ("Ray"), who is African-American, began working for Northrop as a technician in 1983. By 1989, Ray had been promoted no less than three times, attaining the position of "general supervisor" in Northrop's TWT Test and Packaging Assembly Group ("Packaging and



Assembly"). As such, Ray possessed managerial authority over two lower ranked supervisors. By 1996, as a result of layoffs and downsizing, Ray still supervised workers in Packaging and Assembly but no longer had any supervisors reporting to him. By that time Arvid Johnson, who is white, had become Ray's boss by assuming responsibility over Packaging and Assembly as well as two other groups. One of the three groups under Johnson's control was the Microelectronics Group ("Microelectronics").

In 1997, Johnson offered Ray a position in Microelectronics and Ray discussed the transfer with the group's manufacturing manager, Eric Schaudt, who is white, and who also encouraged Ray to join the group. Based on Schaudt's invitation and Ray's desire to avoid a potential downsizing in Packing and Assembly, Ray accepted a position in Microelectronics. Ray retained his pay level and title as "general supervisor" but would report to Schaudt who in turn reported to Johnson. When he joined Microelectronics, Ray was given a supervisory position over two units within the group while Schaudt retained direct authority over four different Microelectronics units. It is disputed whether Ray's duties in this new role were commensurate with those of a "general supervisor" or whether his responsibilities were in line with the lesser-grade positions of "supervisor" or "technical supervisor." In any event, in 1999

Johnson voluntarily left Northrop and his responsibilities over Microelectronics and other groups were assumed by Dave Zelinske, who is white.

In 2000, Northrop reclassified job titles at its Rolling Meadows facility and all general supervisors, including Ray, became "managers of manufacturing." By this time, Ray's duties had not changed but he now was responsible for at least twenty-seven employees, compared to the twenty employees he supervised when he initially transferred to Microelectronics. Ray still reported to Schaudt, but Ray would occasionally fill in for Schaudt when he was absent from work. This arrangement continued until April 2001, when Schaudt accepted a special assignment causing him to leave the Microelectronics group.

That same month, Zelinske initiated a reorganization of employees under his supervision, which encompassed employees of various levels of managerial authority. Zelinske assigned Tim Turner, who is white, to staff the position vacated by Schaudt. The parties dispute whether this constituted a promotion or lateral transfer for Turner. However, prior to this move, Turner was a group manger who, like Schaudt, reported directly to Zelinske while there was a layer of managerial authority, Schaudt, between Zelinske and Ray. According to Zelinske, when deciding who to staff the vacancy created by Schaudt, he wanted to minimize the cadre of managers immediately under his supervision. Zelinske contends that for this reason he did not consider Ray or any

other employee not already directly reporting to him to replace Schaudt. When Ray questioned Zelinske why he had not been in contention to fill Schaudt's position, Zelinske responded that he never considered Ray to have the responsibilities of a manager, regardless of his job title.

As part of Zelinske's reorganization, in April 2001, Ray was rotated from Microelectronics to the Circuit Card Assembly Group ("CCA") and a CCA supervisor switched into Microelectronics. According to Zelinske, the reorganization was motivated by his desire to cross-train his supervisors so as to avoid stagnation, increase productivity, and improve their skills and versatility. Zelinske claims to have transferred Ray to CCA because Ray had never worked in CCA or any other Northrop manufacturing group and because the CCA supervisor, Dave Ure, who is white, had never worked in Microelectronics. Zelinske asserts that exposing Ray and Ure to different aspects of the organization would increase both supervisors' skill sets and make Northrop more competitive. As part of this cross-training reorganization, two other supervisors from different groups, who were both white, also rotated assignments. As a result of the switch, Ray retained his job title and salary but now reported to CCA head Carl Krueger, who is white. From the time he joined CCA in April 2001, until January of 2002, Ray's duties and the number of employees reporting to him remained the same.

In September or October of 2001, Zelinske was told by his superiors to implement a ten percent reduction in force in the manufacturing and depot departments at the Rolling Meadows facility. It is disputed whether this directive took Zelinske by surprise or if he had advance knowledge of the layoffs. In any event, Zelinske instructed his managers to reduce their hourly employee workforce in each group by ten percent and eliminate one supervisor in each group. Zelinske gave CCA head Krueger the responsibility and discretion to decide which of the two supervisors reporting to him would be laid off. The two supervisors under Krueger were Ray and John Solarz, who is white. Zelinske did not provide Krueger with specific criteria for selecting which supervisor to retain.

Krueger chose to retain Solarz and discharge Ray. Krueger believed that Solarz had more experience in manufacturing areas, particularly those that were predicted to be in demand in future years. Krueger also felt that Ray had not taken the initiative to learn the CCA area to which he had been assigned earlier that year, even after Krueger had suggested that Ray do so. Furthermore, Krueger noted that Ray had assigned work to subordinates that Krueger thought Ray should have done himself. Krueger was also dissatisfied that, contrary to his requests, Ray had not spent enough time on the production floor and had not been accessible to his subordinates. Ray was not the only supervisor laid off as two other supervisors, who were white, were also fired as a result

of Northrop's reduction in force. Ray was terminated from Northrop on March 11, 2002.

On December 13, 2002, Ray filed the present lawsuit, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("Section 1981"). Ray claims that he was denied a promotion, demoted, and ultimately terminated on account of his race. Northrop now moves for summary judgment as to all counts of Ray's complaint.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the nonmoving party's case." Id. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings,

but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. Id. at 255; Bay v. Cassens Transport Corp., 212 F.3d 969, 972 (7th Cir. 2000). With these considerations in mind, we now turn to the present motion.

## DISCUSSION

Ray alleges that he was denied a promotion, demoted, and ultimately fired on account of his race in violation of Title VII and Section 1981. Under Title VII, it is unlawful for an employer to "discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e2(a)(1). Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981; Van Zuckerstein v. Argonne Nat'l Laboratory, 984 F.2d 1467, 1472 (7th Cir. 1993). Even though "Section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." Van Zuckerstein at 1472.

Therefore, we will analyze Ray's Title VII and Section 1981 claims simultaneously. See Rao v. County of Cook, 2003 WL 22764588, *8 (N.D. Ill. 2003).

In the Seventh Circuit, it is "well established" that a Title VII/Section 1981 plaintiff may show that he was the victim of discrimination in the workplace "by providing direct evidence of discrimination or by proceeding under the indirect, burden-shifting method" first outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Johnson v. Cambridge Industries, Inc., 325 F.3d 892, 896 (7th Cir. 2003). Because Ray has not presented any direct evidence of race discrimination for any of his claims, he must proceed under the McDonnell-Douglas burden-shifting approach. See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc. 254 F.3d 644, 650 (7th Cir. 2001).

Under McDonnell Douglas, a race discrimination plaintiff such as Ray must first make out a *prima facie* case of discrimination by establishing the following elements: (1) That he is a member of a protected class; (2) that he was performing his job in a satisfactory manner; (3) that he was subjected to an adverse employment action; and (4) that similarly situated employees were treated more favorably. Hoffman-Dombrowski at 650. If Ray can meet these requirements, "through competent evidence," the burden of production shifts to the employer "to offer a permissible, noninvidious reason for the alleged discrimination." Johnson at 897. If the employer

meets this burden, the employee plaintiff "may then rebut that evidence by showing that the employer's reasons are a pretext for discrimination or that the decision was tainted by impermissible, race-based motives. Id. The "ultimate burden" of persuading the trier of fact that the employer intentionally discriminated against the plaintiff "remains at all times with the plaintiff." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

We find that Ray establishes the first three requisite McDonnell Douglas *prima facie* elements for all of his claims. He proves that he his a member of a protected class by demonstrating that he is African-American. He shows that he performed to Northrop's satisfaction by presenting his adequate employment record until April 2001, including numerous promotions and competent performance evaluations. He advances evidence of adverse employment actions by showing that he was denied a promotion, demoted,[1] and ultimately terminated. However, because the remaining resolution of his denial of promotion/demotion claims and his unlawful discharge claims require somewhat different analyses, they will be discussed separately below.

---

[1] It is clear that denial of promotion constitutes an adverse employment action. Because certain facts concerning whether Ray's transfer to the CCA group was materially adverse are disputed, see Hoffman-Dombrowski at 651, we cannot say that as a matter of law the transfer was not a demotion. Therefore, for the sake of argument, we will assume that Ray has satisfied this burden as to the third McDonnell Douglas requirement.

**Denial of Promotion and Decision to Demote**

Having met the first three elements of his *prima facie* case of discriminatory denial of promotion and demotion claims, Ray must show that similarly situated employees were treated more favorably. In determining whether employees are similarly situated "a court must look at all relevant factors, the number of which depends on the context of the case." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000). Ray claims that Turner was a similarly situated employee in that they were both eligible for the Microelectronics manager position vacated by Schaudt. However, a major difference between Turner and Ray was that Turner had been the group manager for CCA while Ray was a second-in-command for Schaudt, who managed Microelectronics. Another key factor in this determination is whether the employees dealt with the same supervisor. Id. For Ray's failure to promote claim, the record indicates that Turner, who ultimately received the promotion to head of Microelectronics, had a different supervisor than Ray. While Ray answered to Schaudt, who in turn answered to Zelinske, Turner was directly accountable to Zelinske. This difference in level of managerial authority and accountability between Ray and Turner demonstrates that the two, as a matter of law, were not similarly situated employees. For this reason, Northrop is entitled to summary judgment on Ray's failure to promote claims.

As for Ray's demotion claims, McDonnell Douglas and its progeny dictate that he must identify similarly situated employees who were treated more favorably, that is, not rotated to a different group. While the record does not even make clear that Ray was demoted when he was transferred to CCA (we are assuming, *arguendo*, that he was), Ray totally fails to point out any like-situated supervisors who were not subject to the cross-training rotations. Moreover, at least three other supervisors, all of whom are white, were reassigned at the same time as Ray. Because of Ray's inability to identify similarly situated employees who were not subject to the cross-training reassignments, he cannot meet his burden of production and his demotion claims thus fail as a matter of law.

**Unlawful Termination**

Unlike the above claims, Ray successfully makes out a *prima facie* case of unlawful termination. As already mentioned, he has established that he is African-American, performed his job satisfactorily, and was fired from his job. We also find that the fourth element is satisfied as Ray has identified a similarly situated employee who was treated more favorably in John Solarz. Like Ray, Solarz was a CCA supervisor. Solzarz was treated more favorably than Ray in that he was not fired as a result of Northrop's reduction in force.

Having made his *prima facie* case, the burden shifts to Northrop to present legitimate and non-discriminatory business reasons for the adverse employment action. Johnson, 325 F.3d at 897. To meet its burden, Northrop offers a variety of explanations for why it reduced its workforce and why Krueger chose to retain Solarz instead of Ray. Northrop offers evidence that in late 2001 it was implementing a ten percent reduction in its Rolling Meadows workforce and that one supervisor in each group would be let go. As for Ray's termination, there were only two supervisors in his CCA group and Krueger articulated a reasoned rationale for keeping Solarz over Ray: Solzarz had more experience in key areas. Ray failed to follow Krueger's instructions concerning spending more time on the production floor, delegating work, and being more accessible to his subordinates. Krueger also felt that Ray had not taken the initiative to learn more about CCA's operations. These valid reasons for selecting Solarz over Ray satisfy Northrop's burden of production for justifying its decision to fire Ray. The burden now shifts back to Ray to offer evidence that Northrop's reasons for firing Ray are pretextual. Id.

The Seventh Circuit defines pretext as "more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.'" Wolf v. Buss (America), Inc., 77 F.3d 914, 919 (7th Cir. 1996) (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995)). If the plaintiff does not offer direct

evidence of pretext, which Ray does not, it may be established by introducing evidence that demonstrates that the defendant's proffered reasons (1) are factually baseless; (2) were not the actual reason for the discharge; or (3) were insufficient to motivate the discharge. Wolf at 919. Northrop's justifications for firing Ray need not be reasonable, only honest. Flores v. Preferred Tech. Group, 182 F.3d 512, 516 (7th Cir. 1999). Ray cannot meet any of the above criteria as he introduces absolutely no evidence whatsoever that Northrop's legitimate reasons for selecting him over Solarz for termination were unreasonable, pretextual, or based on his race. Our courts do "not sit as super-personnel departments, second-guessing an employer's facially legitimate business decisions," Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 532 (7th Cir. 2003). This is not a case to deviate from precedent and because he cannot demonstrate pretext, Ray's unlawful termination claims fail as a matter of law.

## CONCLUSION

Based on the foregoing analysis, Northrop's motion for summary judgment is granted in its entirety.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: JAN 1 6 2004